## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BOARD 11 COLLECTIVE ACCOUNT TRUST,
in its representative capacity, NECA-IBEW
LOCAL 1205 PENSION FUND and NECA-IBEW
FAMILY INSURANCE BENEFIT FUND,
KATHLEEN ENKIRI and NELSON L. MATHIS, JR.,
in their capacities as Plan Trustees,

        Plaintiffs,

                Civil Action No._____

            vs.

DALE C. ROSSMAN, INC., a Florida profit
corporation,

        Defendant.

_____/

## COMPLAINT

Plaintiffs, Board 11 Collective Account Trust, in in its representative capacity, NECA-IBEW

LOCAL 1205 PENSION FUND and NECA-IBEW FAMILY INSURANCE BENEFIT FUND,

KATHLEEN ENKIRI and NELSON L. MATHIS, JR., in their capacities as Plan Trustees, by and

through their undersigned attorneys, sue Defendant Dale C. Rossman, Inc., and allege:

### JURISDICTIONAL AND FACTUAL ALLEGATIONS

1.      Jurisdiction of this Court is founded upon Sec. 301(a) of the Labor Management

Relations Act of 1947, as amended (29 U.S.C. 185(a)), and Sec. 502 of the Employee Retirement

Income Security Act of 1974 (29 U.S.C. 1132) ("ERISA"), as Plaintiffs are aggrieved by Defendant's

violation of certain collective bargaining agreements, trust Funds and trust agreements, and

Defendant's continued refusal to submit contributions in accordance with the terms of those Funds

and agreements, in violation of the provisions of the Employee Retirement Income Security Act of

1974, the Multi-Employer Pension Funds Amendments Act, the terms and provisions of the employee benefit Funds, Section 301 of the Labor Management Relations Act of 1947 and federal common law.

2.      Venue is proper in this Court under Section 502(e)(2) of ERISA (29 U.S.C. 1132(e)(2) ), because Plaintiffs and Defendant Dale C. Rossman, Inc. are located in this federal district and the breaches giving rise to this action took place in this federal district.

3.      Plaintiffs NECA-IBEW Local 1205 Pension Fund ("Pension Fund") and NECA-IBEW Family Insurance Benefit Fund ("Benefit Fund") are employee benefit Funds within the meaning of Sections 3(1), (2), (3) and (37), 502 and 515 of ERISA, as amended by the Multiemployer Pension Funds Amendments Act of 1980, PL. No. 96-364, Sec. 306 (codified as amended at 29 U.S.C. Sections 1002(1), (2), (3) and (37), 1132 and 1145), and bring this action on behalf of the Trustees, participants and beneficiaries of said Funds.   The Funds maintain administrative offices in Jacksonville, Florida.

4.      Plaintiff Kathleen Enkiri is a Trustee of the Pension Fund and the Benefit Fund appointed by the Employers and plaintiff Nelson L. Mathis, Jr. is a Trustee of the Pension Fund and the Benefit Fund appointed by the Union and each is a "fiduciary" within the meaning of Section 3(21) of the ERISA (29 U.S.C. 1002(21)) and as such have standing to be Plaintiffs in this action and to seek the remedies demanded.

5.      Plaintiff Board 11 Collective Account Trust ("Collection Trust") has been appointed as collection agent for the following ERISA employee benefit plans defined within the meaning of Sections 3(3) and (37), 502 and 515 of ERISA, as amended by the Multiemployer Pension Funds Amendments Act of 1980, PL. No. 96-364, Sec. 306 (codified as amended at 29 U.S.C. Sections 1002(3) and (37), 1132 and 1145), and bring this action on behalf of the Trustees, participants and

beneficiaries of said Funds: the National Electrical Benefit Fund ("NEBF"), the NECA-IBEW Local 1205 Vacation Fund ("Vacation Fund") and the NECA-IBEW 1205 Apprenticeship Fund ("Apprenticeship Fund"). The Pension Fund, Benefit Fund, NEBF, Vacation Fund and Apprenticeship Fund are collectively referred to throughout this complaint as "the Funds."

6.      Defendant Dale C. Rossman, Inc. ("Rossman") is a domestic corporation organized under the laws of the State of Florida, with its principal place of business located at 502 County Road 640 East, Mulberry, Florida 33860. Its registered agent for service of process is Bush Ross Registered Agent Services, LLC, 2830 Parkway Street, Lakeland, Florida 33811.

7.      Defendant Rossman is an employer and party in interest in an industry affecting commerce within the meaning of Sections 3(5), (11), (12) and (14) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. Sec. 1002(5), (11), (12) and (14)) and the Labor Management Relations Act of 1947 (29 U.S.C. Sec. 151, et seq.).

8.      For all times relevant, Defendant Rossman was a party to a Letter of Assent, signed on August 23, 1999 with International Brotherhood of Electrical Workers Union Local No. 1205 ("Local 1205"), agreeing to abide by the terms of the inside labor agreement negotiated between the National Electrical Contractors Association, North Florida Chapter and Local 1205. Local 1205 represents, for purposes of collective bargaining, certain employees of Defendant Rossman, and employees of other employers, in industries affecting interstate commerce within the meaning of Sections 2(5), 9(a) and Sec. 301(a) of the Labor Management Relations Act of 1947 (29 U.S.C. Sec. 151, et seq.). The latest Inside Working Agreement negotiated by the parties was executed on June 1, 2015. True and correct copies of the Inside Working Agreement and Letter of Assent are attached to this Complaint as Exhibits "A" and "B", respectively.

9.     By adoption of said collective bargaining agreement, Defendant Rossman adopted the trust agreements and amendments thereof which establish and govern the Funds and are necessary for its administration, and designated as its representatives on the Board of Trustees such Trustees as have been named and appointed pursuant to said trust agreements, together with their successors selected in the manner provided in such trust agreements, and thereby ratified all actions already taken or to be taken within the scope of their authority.

10.     By virtue of adopting the collective bargaining agreement and adopting and assenting to all the terms and provisions of the trust agreements, and the rules and regulations heretofore and hereafter adopted by the Trustees of said trust Funds, Defendant Rossman has agreed as follows:

    A.     to file monthly reports and make timely and prompt contributions to the Plaintiff Funds for each employee covered by the aforementioned labor agreement;

    B.     to designate and accept as its representatives the Trustees named in the declaration of trust and their successors;

    C.     to adopt and abide by all of the rules and regulations adopted by the Trustees of the Funds pursuant to the trust agreements;

    D.     to adopt and abide by all of the actions of the Trustees in administering the Funds in accordance with the trust agreements and the rules so adopted; and

    E.     to pay, in addition to all of the contributions which are due and owing, liquidated damages and interest relative to delinquent contributions, actual attorneys' fees, audit fees, court costs and service fees, should legal action be necessary to obtain delinquent contributions, interest and liquidated damages.

11.     Defendant Rossman has failed to perform its obligations pursuant to the terms and conditions of the collective bargaining agreement and trust agreements by, although not necessarily limited to, the following:

      A.     failing to make continuing and prompt payments to the Funds as required by the applicable collective bargaining agreement and trust agreements for all of Rossman's covered employees; and

      B.     failing to accurately report employee work status to the Funds.

12.     Section 502(g)(2) of ERISA, as amended by the Multiemployer Pension Funds Amendments Act of 1980 (Sec. 306(b)(2)) provides:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan --
>
> (A)   the unpaid contributions,
> (B)   interest on the unpaid contributions,
> (C)   an amount equal to the greater of --
>       (i)    interest on the unpaid contributions, or
>       (ii)   liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A).
> (D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E)   such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of the Internal Revenue Code of 1954.

13.     Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of

a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT ROSSMAN: VIOLATION OF ERISA SECTION 515

14.      As and for a first claim for relief against Defendant Rossman, Plaintiff Funds realleges each and every allegation contained in paragraphs 1 through 13 above and incorporate the same as though fully set forth herein word for word.

15.      Defendant Rossman has failed to timely and wholly contribute amounts that the Trustees have determined are necessary to maintain the Funds' benefits to participants and members employed by Rossman for labor worked during the months of June, July and August 2018.

16.      Defendant Rossman, as a result, presently owes the Funds for delinquent contributions, plus interest and liquidated damages, for the work months of June, July and August 2018.

17.      Despite repeated requests by the Funds, Defendant Rossman has failed to timely file appropriate monthly remittance reports listing its employees performing covered work under the collective bargaining agreement and refused to pay the balance of its required contributions to the Funds on behalf of said employees, which are necessary to maintain the Funds' benefits, as required by the collective bargaining agreement and the Trust Agreements.

18.      As a result of Defendant Rossman's failure to timely make its contributions for the work months of June, July and August 2018 as noted above to the Funds in accordance with the collective bargaining agreement, Defendant Rossman has violated ERISA Section 515 (29 U.S.C. Section 1145), and the Funds are entitled to delinquent fringe benefit contributions in the amount of

$61,317.75 owed to the Funds, plus additional damages as set forth in ERISA Section 502(g)(2) (29 U.S.C. Section 1132(g)(2)).

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT ROSSMAN: BREACH OF TRUST AGREEMENT RULES

19.     As and for a second claim for relief against Defendant Rossman, the Plaintiff Funds realleges each and every allegation contained in paragraphs 1 through 18 above and incorporate the same as though fully set forth herein word for word.

20.     Defendant Rossman is a party to and bound by the Funds' Trust Agreements.  The Trust Agreements obligate Defendant Rossman to make timely contribution payments to the Funds as required by the collective bargaining agreement.  The collective bargaining agreement and the Funds' Collection Procedure authorizes the Trustees to establish rules and regulations establishing reasonable interest assessments and liquidated damages to be added to delinquent contributions.  The collective bargaining agreement further provides that the Trustees are entitled to recover all costs and reasonable attorneys' fees incurred in the collection of delinquent contributions.

21.     Pursuant to the collective bargaining agreement and the Funds' Collection Procedure, the Funds' Trustees have prescribed rules governing delinquencies, which provide that the Funds' recovery rights include recovery of all costs and reasonable attorneys' fees.

22.     As a result of its failure to make contributions in accordance with the collective bargaining agreement, Defendant Rossman has violated the terms of the Trust Agreement.  Based upon the Trust Agreement and the Funds' delinquency rules, the Defendant is liable to the Funds for delinquent contributions, interest, liquidated damages, and the expenses of collection incurred by the Fund, including reasonable attorneys' fees and costs.

23.     Because Defendant Rossman has failed to make timely and prompt contributions in the amounts due for the work months of June, July and August 2018, some of the Funds' beneficiaries and participants could have eligibility terminated and benefits reduced for which they would otherwise qualify.  These beneficiaries and participants would be left without an adequate remedy at law and would suffer severe and irreparable harm if said Defendant is not mandatorily compelled to comply with its collective bargaining agreement and enjoined from further breaches.

24.     The Funds has been damaged as set forth above due to the misappropriation of said Plaintiffs' Funds.

**WHEREFORE**, Plaintiffs demand the following relief:

1.      Judgment on behalf of Plaintiffs and against Defendant Rossman:

A.      For the amount representing unpaid contributions owed to the Funds for the delinquent work months of June, July and August 2018;

B.      For interest and liquidated damages incurred as a result of the failure to timely pay contributions to the Funds, pursuant to ERISA and the terms of the collective bargaining agreement, the Trust Agreement and the applicable Funds delinquency rules;

C.      For reasonable attorneys' fees and actual costs incurred in the prosecution of this legal action, pursuant to ERISA and the terms of the collective bargaining agreement, the Trust Agreement and the applicable Funds delinquency rules; and

D.      For unpaid contributions, interest and liquidated damages becoming due and/or arising after the commencement of this lawsuit through the date of judgment.

2.      For an order requiring Defendant Rossman to submit to an audit of its books and records in accordance with the terms of the collective bargaining agreement and the Trust Agreement to determine the amounts presently due the Plaintiff Funds.

3.      For such other, further or different relief as the Court deems just and proper.

DATED this _____ day of March, 2019.

MILAM HOWARD NICANDRI
GILLAM & RENNER, P.A.

By: _____

PETER E. NICANDRI
Florida Bar No. 823090
14 East Bay Street
Jacksonville, FL  32202
904-357-3660 (telephone)
904-357-3661 (facsimile)
pnicandri@milamhoward.com

and

NATIONAL COUNSEL
PHILIP R. O'BRIEN (SBN 1015549)
Reinhart Boerner Van Deuren, s.c
1000 North Water Street
Suite 1700
Milwaukee, WI 53202
414-298-1000 (telephone)
414-298-8097 (facsimile)
pobrien@reinhartlaw.com

Attorneys for Plaintiff

# INSIDE WORKING AGREEMENT

## 2015-2018

### LOCAL UNION 1205
### INTERNATIONAL BROTHERHOOD
### OF ELECTRICAL WORKERS

**Matt Meadows, Business Manager**

*AND*

**Dale C. Rossman, Inc.**

**APPROVED BY:**

DALE C. ROSSMAN, INC.
502 CR 640 EAST
MULBERRY, FL 33860

**APPROVED BY:**

IBEW LOCAL UNION NO. 1205
2510 N. W. 6TH STREET
GAINESVILLE, FLORIDA 32609

1

EXHIBIT "A"

# AGREEMENT

Agreement by and between the  Dale C. Rossman, Inc. and Local Union No. <u>1205,</u> IBEW.

It shall apply to <u>all firms</u> who sign a <u>Letter of Assent</u> to be bound by the terms of this Agreement.

As used hereinafter in this Agreement, the term Chapter shall mean the North Florida Chapter, Inc., Chapter of NECA and the term "Union" shall mean Local Union No. 1205, IBEW.

The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

# BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union and the Public.  Progress in industry demands a mutuality of confidence between the Employer and the Union.  All will benefit by continuous peace and by adjusting any differences by rational, common sense methods.  Now, therefore, in consideration of the mutual promises and agrees herein contained, the parties hereto agree as follows:

2

**EXHIBIT "A"**

# WORKING AGREEMENT
## ARTICLE I

### EFFECTIVE DATES - CHANGES - GRIEVANCES -DISPUTES

**Section 1.01.**  This Agreement shall take effect June 1st, 2015 and shall remain in effect until May 31, 2018, unless otherwise specifically provided for herein.  It shall continue in effect from year to year thereafter, from June 1st through May 31st of each year, unless changed or terminated in the way later provided herein.

**Section 1.02 (a).**  Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

**(b).**  Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

**(c).**  The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

**(d).**  Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR), either party may serve the other a ten (10) day written notice terminating this Agreement. The terms and conditions of this Agreement shall remain in full force and effect until the expiration of the ten (10) day period.  By mutual agreement only, such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date.  The Council's decisions shall be final and binding.

**(e).**  When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

**(f).**  Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

**Section 1.03.**  This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto.  Any such changes or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

**Section 1.04.**  There shall be no stoppage of work either by strike or lockout because of any

3

EXHIBIT "A"

proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**Section 1.05.** There shall be a Labor/Management Committee of three (3) representing the Union and three (3) representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within forty-eight (48) hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

**Section 1.06.** All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two (2) are unable to adjust any matter within forty-eight (48) hours, they shall refer the same to the Labor/Management Committee.

**Section 1.07.** All matters coming before the Labor/Management Committee shall be decided by a majority vote. Four (4) members of the Committee, two (2) from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

**Section 1.08.** Should the Labor/Management Committee fail to agree or to adjust any matter, such shall then be referred, by mutual consent, to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

**Section 1.09.** When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

## ARTICLE II

### EMPLOYER RIGHTS - UNION RIGHTS

**Section 2.01.** No member of Local Union 1205, while he remains a member of such Local and subject to employment by Employers operating under this Agreement, shall himself become a Contractor for the performance of any electrical work. No Contractor shall be permitted to work with the tools. A Contractor shall mean an owner, partner, officer or any other person who shall have a direct and participating interest in the company.

**Section 2.02.** The Union agrees that if, during the life of this Agreement, it grants to any other Employer in the Electrical Contracting Industry on work covered by this Agreement, any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concessions.

4

EXHIBIT "A"

**Section 2.03.** The Employer recognizes the Union as the exclusive representative of all its employees performing electrical work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rate of pay, wages, hours or employment and other conditions of employment.

**Section 2.04.** Certain qualifications, knowledge, experience and financial responsibility are required of everyone desiring to be an Employer in the Electrical Industry. Therefore, an Employer who contracts for electrical work is a person, firm or corporation having these qualifications and maintains a permanent place of business with a business telephone, suitable financial status to meet payroll requirements, workers' compensation and other protective insurance and employs at least one (1) journeyman when work is available.

**Section 2.05.** For all employees covered by this Agreement, the Employer shall carry Workers' Compensation Insurance with a company (or Association) authorized to do business in this State, Social Security and other such protective insurance as may be required by (the) laws of this State, make contributions to the Florida Unemployment Compensation Commission and make withholding tax payment to the Collector of Internal Revenue, U. S. Government and shall furnish satisfactory proof of the above to the Union upon request.

**Section 2.06.** The Union reserves the right to discipline its members for violation of its laws, rules and agreement.

**Section 2.07.** This agreement does not deny the right of the Union or its representative to render assistance to other labor organizations when necessary and when the Union or its proper representatives decides to do so, but no removal shall take place until notice is first given to the Employer involved.

**Section 2.08.** The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall therefore have no restrictions, except those specifically provided for in the collective bargaining agreement in planning, directing and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

**Section 2.09.** The employer shall have the right to call one (1) man per job by name from the out-of-work list.

**Section 2.10.** No member of a firm (Employer) or his representative shall perform any manual electrical work except to assist in the interpretation of plans and specifications and the method of performing work on the job, in cooperation with the Foreman or General Foreman on jobs where there is a Foreman or General Foreman. Where there is none, he shall contact the journeyman in charge of the job.

5

**Section 2.11 (a).**      Local Union 1205 is a part of the International Brotherhood of Electrical Workers, and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Section 2.11b of this Article, will be sufficient cause for cancellation of this Agreement by the Local Union, after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

**(b).**      The subletting, assigning or transfer by an individual employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting, or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

**(c).**      All charges of violations of Section 2.11b of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

**Section 2.12.**   On all jobs requiring five or more Journeymen, at least every fifth Journeyman, if available, shall be 50 years of age or older.

**Section 2.13.**   Termination slips, furnished by the Union, will be given upon termination of any employee.

 **Section 2.14.** An Employer signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, who signs an assent to this Agreement, may bring up to four bargaining unit employees employed in that Local Union's jurisdiction into this Local's jurisdiction and up to two bargaining unit employees per job from that Local's jurisdiction to this Local's jurisdiction for specialty or service and maintenance work. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on Employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

6

EXHIBIT "A"

# ARTICLE III

## HOURS - WAGES - WORKING CONDITIONS

**Section 3.01(a).**     Eight (8) hours of work performed between the hours of 6:00 a.m. and 6:00 p.m. with thirty (30) minutes for lunch between 11:00 a.m. and 1:00 p.m. shall constitute a work day. Five (5) such days, Monday through Friday, shall constitute the work week. The Employer, with twenty-four (24) hours prior notice to the Union, may institute a work week consisting of four (4) consecutive ten (10) hour days between the hours of 6:00 a.m. and 6:00 p.m., Monday through Friday, with one-half (1/2) hour allowed for a lunch period. Monday or Friday may be used as a make up day, and if utilized, a minimum of eight (8) hours must be scheduled. No make-up day shall be utilized for a Holiday.

Any work performed during the lunch period shall be paid for at the applicable overtime rate. Further, no employees shall be required to work more than five (5) consecutive hours without a thirty (30) minute break for a meal. Any employee who works during this period may reschedule a lunch period without pay or continue to work the remainder of the work day.

**(b).**     Workmen shall be allowed a ten (10) minute break during every consecutive four (4) hour period, to be taken at a mutually agreed upon place and time. Employees are expected to bring their own lunches and beverages.

**Section 3.02(a).**     All work performed outside of the regularly scheduled working hours, Monday through Sunday, shall be paid for at one and one-half (1-1/2) times the straight time rate of pay. All work performed the following holidays: New Year's Day, Easter Sunday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day or days celebrated as such, shall be paid for at double the straight time rate of pay.

Any holiday falling on Saturday, the holiday shall be celebrated on Friday; any holiday falling on Sunday (except Easter Sunday), the holiday shall be celebrated on Monday.

When a job is of such nature that a Check-in and/or Check-out system is necessary, then the employer shall notify the Business Manager and a mutually satisfactory system shall be worked out between the parties.

When an employee works more than four (4) hours overtime after the regular working hours of any day, he shall be allotted thirty (30) minutes for a meal and at five (5) hour intervals thereafter, meal time shall be paid for by the employer.

Workmen required to work in excess of sixteen (16) hours and who are instructed to report to work during normal work hours the same day shall continue to receive the overtime rate until the employee has received at least eight (8) hours rest.

EXHIBIT "A"

On all jobs where not more than one (1) Foreman is required under the terms of this Agreement, and four (4) or more workmen are required to work overtime, one (1) workman shall be paid Foreman's rate of pay.

(b).   If an employee misses scheduled straight time work through no fault of the contractor, and without receiving prior approval from the contractor, the employee shall not be eligible for overtime pay, until the employee has first completed forty (40) straight time hours in the work week. Holidays will not count against the employee in this calculation. Overtime previously earned outside of scheduled work hours will not be lost under this article.

**Section 3.03.**  Every effort shall be made to notify all employees twenty-four (24) hours prior to working overtime unless such work is of an emergency nature.  It shall be the option of any employee presently working to accept the assignment.

**Section 3.04.**  No work shall be performed on Labor Day except in case of emergency and then only after permission is granted by the Business Manager of the Union.

**Section 3.05.**  Effective June 1st, 2015 the minimum wage rate shall be:

General Foreman - Not less than Eighteen percent (18%) per hour above Journeyman

| | |
|---|---|
| 6/1/2015 | $34.93 |
| 6/5/2016 | $35.68 |
| 6/5/2017 | $36.41 |

Foreman - Not less than Thirteen percent (13%) per hour above Journeyman

| | |
|---|---|
| 6/1/2015 | $33.45 |
| 6/5/2016 | $34.16 |
| 6/5/2017 | $34.86 |

Journeyman Wireman

| | |
|---|---|
| 6/1/2015 | $29.60 |
| 6/5/2016 | $30.23 |
| 6/5/2017 | $30.85 |

**APPRENTICE WIREMAN – SIX (6) PERIODS**

| | | |
|---|---|---|
| 1ST PERIOD | 50 | % OF JOURNEYMAN WIREMAN RATE |
| 2ND PERIOD | 50 | % OF JOURNEYMAN WIREMAN RATE |
| 3RD PERIOD | 55 | % OF JOURNEYMAN WIREMAN RATE |
| 4TH PERIOD | 60 | % OF JOURNEYMAN WIREMAN RATE |
| 5TH PERIOD | 70 | % OF JOURNEYMAN WIREMAN RATE |
| 6TH PERIOD | 80 | % OF JOURNEYMAN WIREMAN RATE |

8

**EXHIBIT "A"**

## MARKET RECOVERY PROGRAM

General Foreman - Not less than Eighteen percent (18%) per hour above Journeyman

| | |
|---|---|
| 6/1/2015 | $27.94 |
| 6/5/2016 | $28.54 |
| 6/5/2017 | $29.13 |

Foreman - Not less than Thirteen percent (13%) per hour above Journeyman

| | |
|---|---|
| 6/1/2015 | $26.76 |
| 6/5/2016 | $27.33 |
| 6/5/2017 | $27.89 |

Journeyman Wireman.......................................

| | |
|---|---|
| 6/1/2015 | $23.68 |
| 6/5/2016 | $24.18 |
| 6/5/2017 | $24.68 |

The minimum wage rate for other classifications shall be:

**GENERAL FOREMAN:** Not less than Eighteen percent (18%) per hour above applicable Journeyman's rate of pay.

**FOREMAN:** Not less than Thirteen percent (13%) per hour above applicable Journeyman's rate of pay.

**WELDER:** A Journeyman, when referred out as a welder, shall be paid an additional ten percent (10%) per hour when welding with a minimum requirement of two (2) hours of that premium pay. The employer shall provide hood and gloves. However, the employee may provide his own set of hood and gloves, but must be industry standard.

**JOURNEYMAN WIREMAN (When Cable Splicing):** Foreman's rate of pay. Cable splicing shall be defined as any splice pertaining to lead or paper or any cable over 15 KVA.

**INSTRUMENT & CONTROL TECHNICIAN:** Journeyman's rate of pay.

**HVAC TECHNICIAN:** Journeyman's rate of pay.

**HAZARD PAY:** Employees working from boatswain's chair or spider will be paid time and a half (1-1/2) the straight time rate of pay while performing such work.

9

EXHIBIT "A"

**HEALTH AND WELFARE PLAN:**
The Employers shall contribute six dollars and five cent ($6.05) per Journeyman or three dollars and seventy-five cents ($3.75) per Apprentice pay hour worked into the NECA/IBEW Family Medical Care Plan.  Payment shall be forwarded monthly to the Board 11 Collective Account Trust no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

**Journeyman Upgrade Training:**
North Florida Chapter NECA and IBEW Local 1205 have a vested interest in the future of the Electrical Industry.  Therefore, a system of continuing education shall be developed and implemented by a joint labor management cooperative committee to meet the demand of rapidly changing technology in our industry.

**FLORIDA BUILDING TRADES CONTRIBUTION:**
The Employer shall pay one cent ($.01) per hour worked for the Florida Building Trades Affiliation.  Payment shall be forwarded monthly to Board 11 Collective Account Trust no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

**LOCAL UNION AFFILIATE FUND:**
The Employer shall pay one cent ($.01) per hour worked for the Local Union Affiliate Fund. Payment shall be forwarded monthly to the Board 11 Collective Account Trust no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

**NATIONAL LABOR – MANAGEMENT COOPERATIVE COMMITTEE:**
The employer shall pay one cent ($.01) per hour worked up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly to the Board 11 Collective Account Trust no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

**GAINESVILLE LABOR MANAGEMENT COOPERATIVE COMMITTEE:**
The Employer shall pay one cent ($.01) per hour worked for the Gainesville Labor Management Cooperative Committee Fund.  Payment shall be forwarded monthly to the Board 11 Collective Account Trust no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

**Two Weeks Vacation:**
Employees shall be allowed to take two (2) weeks vacation per year after giving reasonable notice to the Employer.

EXHIBIT "A"

**Pension Plan:**
The Employer shall contribute into the Local Union 1205 Pension Fund as established by the Amended Agreement and Declaration of Trust executed as of November 1, 1973, an amount equal to eleven percent (11%) of the employee's gross wages. The payment shall constitute a debt due and owing to NECA-IBEW LOCAL UNION #1205 PENSION FUND on the last day of each calendar month. The payment and payroll report shall be mailed to reach Board 11 Collective Account Trust not later than fifteen (15) calendar days following the end of each calendar month. Individual Employers who fail to make payment as provided above shall be subject to having this Agreement terminated upon seventy-two (72) hours notice in writing being served by the Union provided that Employers fail to show satisfactory proof that delinquent payments have been made to the Pension Fund.

The Employer agrees to be bound by the Amended Agreement and Declaration of Trust of the NECA-IBEW LOCAL UNION #1205 PENSION FUND in the administration of the Fund pursuant to the provision of the Amended Agreement and Declaration of Trust or as it may hereafter be amended.

The Employer agrees that it shall be bound by all actions taken by the Trustees of the NECA-IBEW LOCAL UNION #1205 PENSION FUND in the administration of the Fund pursuant to the provision of the Amended Agreement and Declaration of Trust or as it may hereafter be amended.

**IBEW PAC Deduction:**
The Employer agrees to deduct and transmit to IBEW PAC an amount of five cents ($0.05) for each hour worked from the wages of each employee who voluntarily authorizes such contributions on the forms provided for that purpose by IBEW PAC.

These transmittals shall occur monthly and shall be accompanied by a list of names of those employees for whom such deductions have been made and the amount deducted for each such employee.

These deducted funds are to be included in your monthly payroll report and mailed to reach Board 11 Collective Account Trust Fund not later than fifteen (15) calendar days following the end of each calendar month.

**Advertising Fund:**
The Employer agrees to deduct, upon receipt of an authorization card which has been signed freely and voluntarily and not out of fear of reprisal, from the pay of each IBEW member, the sum of five cents ($.05) for each hour worked. Each Employee shall understand that Local Union 1205 Advertising Committee will use the money contributed to advertise. These deducted funds are to be included in your monthly payroll report and mailed to reach Board 11 Collective Trust Account not later than fifteen (15) calendar days following the end of each calendar month.

**Section 3.06(a).** Wages shall be paid weekly by check no later than the end of the scheduled work day on Thursday, with the exception that wages may be paid in cash no later than the end of the

11

scheduled workday on Friday. The Employer may require participation in a Direct Deposit program. Not more than four (4) days' wages may be withheld at any time. When two or more workmen are employed on the same job, they shall be paid at the job. All employers shall establish and maintain a Monday through Sunday Pay week.

(b).   When proper pay is not received waiting time will be two (2) hours of pay at time and one half (1 ½) rate of pay each day starting noon Friday, Monday-Friday, with noon the beginning of each new day. The employee shall notify the immediate supervisor when the improper pay is discovered.

(c).   Any workman laid off by the Employer shall be paid all his wages immediately. Any workman discharged for cause by the Employer shall be paid all his wages by the end of the next business day. Payment shall be delivered to the Union Hall. In the event he is not paid off, waiting time at the regular rate shall be charged until payment is made, not to exceed eight (8) hours within each day. In the event a paycheck is mailed to an employee it shall be mailed certified mail.

(d). All out of state contractors must open a local bank account from which payroll checks are drawn. All paycheck stubs must state year-to-date totals on wages, NECA-IBEW Local Union #1205 Pension Fund, and amount of taxes.

**Section 3.07.** The Employer shall determine when supervision is required on jobs, or in a shop. The selection of/or promotion to Foreman shall be the prerogative of the employer. The Employer shall determine the duties and responsibilities of the Foreman, including working with tools and shall be responsible for their actions as Foreman. There shall be no limit to crew size. Any person designated as Foreman shall receive no less than the amount specified in the Agreement.

**Section 3.08.** Excepting as provided in Article II, Section 8, workmen are to take directions or orders, or accept the layout of any job from their Foreman. In the absence of the Foreman, the workmen shall receive instruction from the Employer or his representative. It shall be the duty of the Foreman, General Foreman and Journeyman to provide the Employer with the necessary report as required.

**Section 3.09.** Foremen or General Foremen or Employer or Representative shall be allowed to give momentary instructions to workmen in the absence of a Foreman and General Foreman to prevent damage or loss to persons or property.

**Section 3.10.** Any man reporting for work as defined herein, and being terminated, not having been notified the day previous of such termination, shall receive not less than two (2) hours wages in order to gather his tools and personal belongings and shall be paid off in full immediately. Employees reporting for work, not having been notified the previous day by the Employer not to report, shall receive two (2) hours pay for reporting at the prevailing rate.

Any man being terminated between the hours of 10:00 a.m. and 4:30 p.m. shall be notified not less than one (1) hour prior to termination to allow him sufficient time to gather his personal belongings. In the event the employee is not paid off, waiting time at the regular rate shall be

EXHIBIT "A"

charged until payment is made providing the men remain available. It shall be the duty of the employee to notify the Employer or his representative not later than fifteen (15) minutes prior to starting time if he is unable to work.

**Section 3.11.** Any man required to report and who reports for work on Saturday, Sunday, or the recognized holidays in this Agreement, shall receive pay for not less than four (4) hours at the overtime rate for the type of work in question on all industrial work. This shall apply to shop and job. When employees are directed to report to a job and do not start work due to weather conditions, lack of materials or other causes beyond the Employers control, they shall receive two (2) hours at the regular straight time rate of pay. The employees shall remain on the job available for work during the period for which they are being paid or until they are released by the Employer or the Employer's representative.

**Section 3.12.** The Employer shall pay for traveling time and furnish transportation for all workmen, tools and material from shop to job, job to job and job to shop. No employee shall use his personal vehicle for transportation of the Employer's tools or materials and he shall not be required to do so by the Employer. Under no circumstances shall an employee, or any member of the employee's family, rent or lease any vehicle of any type to the Employer unless they own or operate a bona fide rental lease agency.

**Section 3.13.** Each individual Employer shall furnish the Union with a copy of their weekly payroll showing the names of all workmen together with the number of hours worked and the amount of wages paid. It is agreed that each individual Employer shall deduct from the individual member's wages a sum to be certified by the Local Union from time to time, and upon written authorization of each member, which shall be forwarded monthly to Board 11 Collective Account Trust, covering the Member's additional working dues to the Union.

In no case shall this deduction be received in the Board 11 Collective Account Trust office any later than fifteen (15) calendar days following the end of each calendar month.

**Section 3.14.** The Employer recognizes the right of the Union to appoint Stewards on any job, or at any shop where workmen are employed under the terms of this Agreement. Such Stewards shall be allowed sufficient time during regular working hours to see that the terms and conditions of this Agreement are observed on the job or at his shop. At no time shall any Employer discriminate against any Steward because of his faithful performance of duties as such. Nothing in this section shall be construed to limit a Steward in performing work with the tools. The office of the Business Manager shall be notified twenty-four (24) hours prior to the termination of a Steward. The Union shall notify the Employers in writing the names of all Stewards appointed for job or shop.

**Section 3.15.** The Employer shall implement an overall electrical safety program that directs activity appropriate for the voltage, energy level, and circuit conditions in accordance with all applicable laws and the Employer's Safety Policy, but at a minimum the following shall be required:

13

EXHIBIT "A"

Two (2) or more journeyman shall work together as a safety measure on all energized circuits or equipment carrying 440 volts or over, or on work in any location considered to be hazardous by the journeyman performing the work. A journeyman shall be permitted to de-energize circuits of 440 volts or over by opening an enclosed switch.

It shall be the duty of every journeyman who installs name plates, cable marking tags, etc., to be positive that such markings are properly installed as to circuits and voltage. On high voltage circuits above 440 volts the marking of all circuits and nameplates shall be verified by the owner's inspector as to correctness and proper location.

(a). Controls. Controls that are to be deactivated during the course of work on energized or de-energized equipment or circuits shall be tagged.

(b). Equipments and Circuits. Equipment or circuits that are de-energized shall be rendered inoperative and shall have tags attached at all points where such equipment or circuits can be energized.

(c). Tags. Tags shall be placed to identify, plainly, the equipment or circuits being worked on.

In the absence of the owner's inspector the installation of such marking tags and name tags shall be verified by at least two (2) journeymen on the job and they shall make a record of such marking tag installations, which record is to be filed with the Employer and all parties concerned.

No journeyman shall work on any energized circuit of any voltage unless the circuit or circuits have been properly tested to determine the voltage reading in order that the proper safety measures and precautions to protect life, limb and property may be taken, and then proceed with the work. Such tests shall be conducted prior to exposure to the conductors or parts of the conductors.

<u>**Section 3.16.**</u> Journeymen and apprentices shall, at a minimum, provide themselves with the following tools:

### O - Optional

| | |
|---|---|
| 1 pr. 8" Klein Pliers (or equal) | 1 hacksaw frame |
| 1 pr. diagonals | 1 voltage tester |
| 3 standard screwdrivers, assorted sizes | 1 Allen wrench set - to 3/8 inch |
| 2 Phillips screwdrivers, assorted sizes | 1 Roto-Split |
| 1 25-foot tape | 1 Socket or Ratchet Wrench 3/8 to 3/4 |
| 1 pr. long-nose pliers | inch with Drive |
| 1 6-foot rule | 1 Pencil |
| 2 pr. channel-lock pliers | 1 digital VOM meter - O |
| 1 pocketknife | |

The Employer shall provide a safe place for the storage of the employee's tools. Workmen shall be responsible for their own personal tools while on the job.

14

EXHIBIT "A"

**Section 3.17.** The Employer shall furnish all other necessary tools and equipment and all such tools and equipment shall be in _first class_ condition at all times. Workmen shall be held responsible during working hours for such tools and equipment issued to them. The Employer shall furnish the necessary lockers, toolboxes or other safe place for the storage of tools and equipment.

When any tool is stolen or lost, it shall be reported to the Employer immediately. Personal tool or tools shall be replaced by the Employer within seventy-two (72) hours. Tools shall be of equal or better quality, American made and Union made where possible. When any tool becomes defective, it shall also be reported to the Employer immediately. The employee shall store the tools in the lockers or boxes provided when not in use on the job. The Employer shall furnish the necessary lockers and toolboxes with locks, or other safe place for the storage of tools and equipment. Employees shall cooperate with the Employer in any control system which the Employer may use in the issuance and control of tools.

The Union shall have the jurisdiction over the handling and operation of Electrical tools after delivery to the job site. This is not to be construed in any way to prevent the contractor, common carrier or supplier's truck drivers from unloading at the job site. Materials including but not limited to fixtures, fittings, equipment, and accessories shall be unloaded, stored, relocated, or moved to the work area with apprentices when available. If apprentices are not available, supplemental help will be supplied.

**Section 3.18.** A Journeyman shall be required to make corrections on improper workmanship for which he is responsible on his own time unless errors were made by order of the Employer or the Employer's representative. Employers shall notify the Union of workmen who fail to adjust improper workmanship and the Union assumes responsibility for the enforcement of this provision.

**Section 3.19.** The representative of the Union shall be allowed access to any shop or job at any reasonable time where workmen are employed under the terms of this Agreement. This would apply to jobs where the Employer has legal right to grant such access.

**Section 3.20.** It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3%) of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

EXHIBIT "A"

An individual Employer who fails to remit as provided above shall be additionally subject to having his agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the individual employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of his Labor Agreement.

**Section 3.21.** Any outside firm doing electrical work within the jurisdiction of this Local Union shall be governed by the applicable Portability Agreement.

**Section 3.22.** The Employer shall furnish sanitary drinking ice water, sanitary drinking cups, hand cleaning capability (when possible), and sanitary toilets for the employees.

**Section 3.23.** When so elected by the contractor, multiple shifts of eight (8) hours for at least five (5) days' duration may be worked. When two (2) or three (3) shifts are worked:

The first shift (day shift) shall consist of eight (8) consecutive hours worked between the hours of 8:00 A.M. and 4:30 P.M. Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

The second shift (swing shift) shall consist of eight consecutive hours worked between the hours of 4:30 P.M. and 1:00 A.M. Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus 17.3% for all hours worked.

The third shift (graveyard shift) shall consist of eight (8) consecutive hours worked between the hours of 12:30 A.M. and 9:00 A.M. Workmen on the "graveyard shift" shall be paid at the regular hourly rate of pay plus 31.4% for all hours worked.

The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

If the parties to the Agreement mutually agree, the shift week may commence with the third shift (graveyard shift) at 12:30 A.M. Monday to coordinate the work with the customer's work schedule. However, any such adjustment shall last for at least five (5) consecutive days' duration unless mutually changed by the parties to this agreement.

An unpaid lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required before the established start time and after the completion of eight (8) hours of any shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when either the second or third shift is worked.

16

EXHIBIT "A"

When so elected by the contractor, multiple shifts of at least four (4) days' duration may be worked, Monday through Friday. When two (2) are worked:

The first shift (day shift) shall consist of ten (10) consecutive hours worked between the hours of 6:00 A.M. and 6:00 P.M. Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

The second shift (swing shift) shall consist of ten (10) hours worked between the hours of 6:00 P.M. and 6:00 A.M. Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus 17.3% for all hours worked.

A lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required after the completion of a regular shift shall be paid at one and one-half (1-1/2) times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when a second shift is worked.

The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

**Section 3.25.**  Not Used

**Section 3.26.**  Gainesville Labor Management Cooperative Committee:
The parties agree to participate in a Labor Management Cooperation Fund, under authority of Section 6(b) of the Labor Management Cooperation Act of 1978, 29 U.S.C.§175(a) and Section 302(c)(9) of the Labor Management Relations Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

(1)     to improve communication between representatives of labor and management;

(2)     to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

(3)     to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

(4)     to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

(5)     to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and

17

EXHIBIT "A"

the industry;

(6)   to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

(7)   to engage in public education and other programs to expand the economic development of the electrical construction industry;

(8)   to enhance the involvement of workers in making decisions that effect their working lives; and

(9)   to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the GLMCC, as provided in said Agreement and Declaration of Trust.

Each employer shall contribute one cent ($.01). Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The North Florida Chapter, NECA, or its designee, shall be the collection agent for the Fund.

If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to fifteen percent (15%) of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for costs of collecting the payment together with attorney's fees.

## ARTICLE IV

### REFERRAL PROCEDURE

**Section 4.01.** In the interest of maintaining an efficient system of production in the industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

18

EXHIBIT "A"

**Section 4.02.**   The Union shall be the sole and exclusive source of referral of applicants for employment.

**Section 4.03.**   The Employer shall have the right to reject any applicant for employment.

**Section 4.04.**   The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements.  All such selection and referral shall be in accord with the following procedure.

**Section 4.05.**   The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below.  Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

**EXHIBIT "A"**

## JOURNEYMAN WIREMAN - JOURNEYMAN TECHNICIAN

**Group I**   All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee, <u>and,</u> who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

Group I status shall be limited to one Local Union at one time. An applicant who qualifies for Group I in a local union shall be so registered electronically and remain on Group I in that local union unless and until the applicant designates another local union as his or her Group I local union. If an applicant qualifies for Group I status in a local union other than his or her home local union and designates that local as his or her Group I local union, the business manager of the new Group I status local union shall by electronic means notify the business manager of the applicant's former Group I status local union.

**Group II**   All applicants for employment who have four (4) or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**Group III**   All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**Group IV**   All applicants for employment who have worked at the trade for more than one (1) year.

**Section 4.06.**   If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure but such applicants, if hired, shall have the status of "temporary employees".

**Section 4.07.**   The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

**EXHIBIT "A"**

**Section 4.08.**   "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto, which includes the area from which the normal labor supply is secured.

### STATE OF FLORIDA

| | | | |
|---|---|---|---|
| Alachua | Franklin | Lafayette | Suwannee |
| Bay | Gadsden | Leon | Taylor |
| Bradford | Gilchrist | Levy | Union |
| Calhoun | Gulf | Liberty | Wakulla |
| Citrus | Hamilton | Madison | Walton |
| Clay * | Holmes | Marion | Washington |
| Columbia | Jackson | Putnam ** | |
| Dixie | Jefferson | Sumter *** | |

### STATE OF GEORGIA

| | | |
|---|---|---|
| Berrien | Echols | Seminole |
| Brooks | Grady | Thomas |
| Cook | Lanier | |
| Decatur | Lowndes | |

  * That portion of Clay County south of a line which has its place of beginning on the Clay-Putnam County Line at the point where the Clay-Putnam County Line changes its course from a westerly to a southwesterly direction thence from this point a line running due west to an intersection with the Clay-Bradford County Line.

  ** That portion of Putnam County west of the St. Johns River.

  *** Only that portion of Sumter County north of a line having its place of beginning at the intersection of the Sumter-Citrus-Hernando County Lines and running due east to the Sumter-Lake County Line.

  The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage in areas under the Davis-Bacon Act to which to Agreement applies.

**Section 4.09.**   "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one (1) year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

EXHIBIT "A"

**Section 4.10.** "Examination" - An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the IBEW. Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four (4) years experience in the trade.

**Section 4.11.** The Union shall maintain an "Out of Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

**Section 4.12.** An applicant who has registered on the "Out of Work List" must renew his application every thirty (30) days or his name will be removed from the "List".

**Section 4.13.** An applicant who is hired and who receives, through no fault of his own, work of thirty (30) calendar days or less shall, upon re-registration, be restored to his appropriate place within his Group.

**Section 4.14.** Employers shall advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in GROUP I in the order of their place on the "Out of Work List" and then referring applicants in the same manner successively from the "Out of Work List" in GROUP II, then GROUP III, and then GROUP IV. Any applicant who is rejected by the Employer shall be returned to his appropriate place within his GROUP and shall be referred to other employment in accordance with the position of his GROUP and his place within his GROUP.

**Section 4.15.** The only exceptions which shall be allowed in this order of referral are as follows:

(a)     When the Employer states which bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b)     The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age. Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

**Section 4.16.** An Appeals Committee is hereby established composed of one (1) member appointed by the Union, one (1) member appointed by the Employer or by the Association, as the case may be, and a Public Member appointed by both these members.

**Section 4.17**
(a).     It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Section 4.4 through 4.15 of the Agreement. The Appeals Committee shall have the poser to

22

EXHIBIT "A"

make a final and binding decision on any such complaint which shall be complied with by the Local Union.  The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions of this Agreement and its decisions shall be in accord with this Agreement.

(b)      An applicant who is discharged for cause two (2) times within a twelve (12) month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral.  The neutral member of the Appeals committee shall, within three (3) business days, review the qualifications of the applicant and the reasons for the discharges.  The neutral member of the Appeals Committee may in his/her sole discretion:

(1)      require the applicant to obtain further training from the JATC before again being eligible for referral;

(2)      disqualify the applicant for referral for a period of four(4) weeks, or longer, depending upon the seriousness of the conduct and/or repetitive nature of the conduct;

(3)      refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or

(4)      restore the applicant to his/her appropriate place on the referral list.

**Section 4.18.**  A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

**Section 4.19.**  A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

**Section 4.20.**  Apprentices shall be hired and transferred in accordance with the apprenticeship provision of the Agreement between the parties.

**Section 4.21.**  When making reduction in the number of employees due to lack of work, Employers shall use the following procedure:

(a).      Temporary Employees, if any are employed, shall be laid off first.  The employees in GROUP IV shall be laid off next, if any are employed in this GROUP.  Next to be laid off are employees in GROUP III, if any are employed in the GROUP, then those in GROUP II, then those in GROUP I.

EXHIBIT "A"

(b).   Paragraph (a) will not apply as long as the special skills requirement as provided for in Section 4.15 (a) is required.

(c).   Supervisory employees covered by the terms of this Agreement will be excluded from layoff as long as they remain in a supervisory capacity.  When they are reduced to the status of Journeyman, they will be slotted in the appropriate GROUP in paragraph (a) above.

# ARTICLE V

## APPRENTICE AND TRAINING

**Section 5.01.**  There shall be a Joint Apprenticeship and Training Committee (JATC) consisting of a total of either six (6) or eight (8) members who shall serve as trustees to the local apprenticeship and training trust. An equal number of members (either three [3] or four [4]) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the Local Union 1205 of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study.  All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (unindentured, intermediate journeymen, etc.).

**Section 5.02.**  All JATC member appointments, reappointments and acceptance of appointments shall be in writing.  Each member shall be appointed for a three (3) year term, unless being appointed for a lesser period of time to complete an unexpired term.  The terms shall be staggered, with one (1) term from each side expiring each year.  JATC members shall complete their appointed term unless removed for cause by the party they represent or they voluntarily resign. All vacancies shall be filled immediately.

The JATC shall select from its membership, but not both from the same party, a Chairman and Secretary who shall retain voting privileges.  The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

**Section 5.03.**  Any issue concerning an apprentice or an apprenticeship matter shall be referred to the JATC for its review, evaluation and resolve; as per standards and policies.  If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article One of this agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

24

**EXHIBIT "A"**

**Section 5.04.** There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunication apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

**Section 5.05.** The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC. All employees of the JATC shall serve at the pleasure and discretion of the JATC.

**Section 5.06.** To help ensure diversity of training, provide reasonable continuous employment opportunities and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprentices with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

**Section 5.07.** All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selection procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two (2) years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

**Section 5.08.** The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture the number of apprentices necessary to meet the job site ratio as per Section 5.12.

**Section 5.09.** Though the JATC cannot guarantee any number of apprentices; if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request. If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

**Section 5.10.** To accommodate short-term needs when apprentices are unavailable, the JATC shall assign unindentured workers who meet the basic qualifications for apprentices, Unindentured

25

workers shall not remain employed if apprentices become available for OJT assignment. Unindentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the unindentured person must sign a letter of understanding with the JATC and the employer – agreeing that they are not to accumulate more than two thousand (2,000) hours as an unindentured, that they are subject to replacement by indentured apprentices and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an unindentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an unindentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to unindentured; such as Math Review, English, Safety, Orientation/Awareness, Introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

**Section 5.11.** The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and unindentured. Contributions to other benefit plans may be addressed in other sections of the Agreement.

**Section 5.12.** Each job site shall be allowed a ratio of two (2) apprentice(s) for every three (3) Journeyman Wiremen(man) .

| Number of Journeymen | Maximum Number of Apprentices/ Unindentured |
|---|---|
| 1 to 3 | 2 |
| 4 to 6 | 4 |
| etc. | etc. |

The first person assigned to any job site shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

**Section 5.13.** An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in sight of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order

26

EXHIBIT "A"

to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman.

An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

**Section 5.14.** Upon satisfactory competition of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeyman to work in the jurisdiction covered by this Agreement.

**Section 5.15.** The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA and other applicable regulations

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

**Section 5.16.** All Employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties' signatory to the local apprenticeship and training trust agreement. The current rate of contribution is thirty-eight cents ($.38) per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employees Benefit Agreement and Trust.

## ARTICLE VI

### RECEIVING TRUST

**Section 6.01.** There is hereby established a one-check payment on all Funds as well as NEBF, IBEW assessments, and NECA dues where applicable, to a Receiving Trust. This Receiving Trust Fund shall be known as the "Board 11 Collective Account Trust." The fund is to be administered solely by the employers. The fund may not be used in any manner detrimental to the Local Union or IBEW.

**Section 6.02.** Effective August 1, 1998, the employers shall contribute five cents ($. 05) per hour for each hour actually worked including premium and/or overtime hours for all employees covered by this Agreement to the "Board 11 Collective Account Trust." These monies are specifically for the purpose of administering the Electrical Industry Receiving Trust Fund and shall be paid to the

EXHIBIT "A"

Administrative Group and/or Administrator of the Fund.  The contribution rate of five cents ($.05) is specifically charged to administer the Receiving Trust. The Administrative Group and/or the Administrator of the Receiving Trust Fund shall be appointed by the North Florida Chapter, NECA.  An additional five cents ($.05) per hour worked will be paid to the South East Florida Electrical Contractors Association Inc. (SFECA) as an Administrative Maintenance Fee, to be used solely by the South East Florida Electrical Contractors Association Inc. (SFECA).

**Section 6.03(a).**     Monies received by the Receiving Trust Fund will be paid to the respective IBEW Local Union 1205 Pension Fund, the Electricians Local Union 1205 Health & Welfare Fund, and the Joint Apprenticeship and Training Trust Fund, in accordance with the terms of the Articles provided herein;

(b). Additional monies received by the Receiving Trust Fund shall be paid to the NEBF, IBEW assessments, IBEW PAC and NEIF (if applicable), in accordance with the terms of the Articles provided herein;

(c).     Additional monies received by the Receiving Trust Fund on behalf of the NECA members and designated as NECA dues shall be forwarded to the North Florida Chapter, NECA. The NECA dues may not be used in any manner detrimental to the Local Union or the IBEW, and the enforcement for delinquent payments of these funds shall be the sole responsibility of the fund or the employers and not the Local Union.

**Section 6.04.**  It is understood and agreed that the failure of any employer to pay the proper amounts to the Electrical Industry Receiving Trust Fund as required shall constitute a breach of this Labor Agreement.  Enforcement for delinquent payments to the fund shall be the sole responsibility of the fund or the employers and not the Local Union.

28

**EXHIBIT "A"**

# ARTICLE XI

## SUBSTANCE ABUSE

**Section 11.01.** The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles, and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

EXHIBIT "A"

# ARTICLE XII

## CODE OF EXCELLENCE

**Section 12.01.** The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity.  The Code of Excellence has proven to be a vital element in meeting the customers' expectations.  Therefore each IBEW local union and NECA chapter shall implement a Code of Excellence Program.  The program shall include minimum standards as designed by the IBEW and NECA.

EXHIBIT "A"

## SEPARABILITY CLAUSE

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provisions shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon seek to negotiate substitute provisions which are in conformity with the applicable laws.

SIGNED FOR THE EMPLOYER:

SIGNED FOR THE UNION:

International Brotherhood
of Electrical Workers
Local Union 1205

Dale C. Rossman, Inc.

_Kenneth Brown_
Kenneth Brown, President

_Matt Meadows_
Matt Meadows, Business Manager

_6-1-15_
Date

_6-1-15_
Date

APPROVED
INTERNATIONAL OFFICE-I.B.E.W.

JUL 1 4 2015

Lonnie R. Stephenson, President
This approval does not make the
International a party to this agreement.

31

**EXHIBIT "A"**

LETTER OF ASSENT – A

firm does hereby authorize [1] Nat. Electrical Contractors Ass

North Florida Chapter _____ as its collective bargaining representative for all matters contained in or pertaining

current and any subsequent approved [2] Inside _____ labor agreement between the

[1] Nat. Electrical Contractors Assn – N. FL Chapter _____ and Local Union [3] 1205

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved

agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the '_____ d

_____. It shall remain in effect until terminated by the undersigned employer giving written notice t

[1] Nat. Electrical Contractors Assn – N FL Chapter _____ and to the Local Union at least one hu

fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the L. Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on app or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

Dale Rossman , Inc.
[4] Name of Firm

P O Box 1021
Street Address/P.O. Box Number

Mulberry FL 33860
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.: 59-2340401

SIGNED FOR THE EMPLOYER

BY [7] _Kenneth Brown_
(original signature)
NAME [8] DALE C. ROSSMAN, INC.
KENNETH BROWN
TITLE/DATE VICE-PRESIDENT 5/19/99

APPROVED
INTERNATIONAL OFFICE - I.B.E.W
AUG 23 1999
J.J. Barry, President
This approval does not make the
International a party to this agreement.

SIGNED FOR THE UNION [3] 1205 , IBEW

BY [7] _Jeffery Henderson_
(original signature)
NAME [8] Jeffery Henderson

TITLE/DATE Business Mgr.

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.
[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.
[3] LOCAL UNION
Insert Local Union Number.
[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

EXHIBIT "B"